IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:17-CR-2** |
| | : | |
| v. | : | **(Judge Neary)** |
| | : | |
| **MIGUEL ARNOLD,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court is defendant Miguel Arnold's *pro se* motion (Doc. 389) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and motion (Doc. 393) to expand the record. Arnold contends that his trial counsel rendered ineffective assistance before, during, and after his trial in violation of the Sixth Amendment as articulated by Strickland v. Washington, 466 U.S. 668, 687 (1984). (Doc. 389). The record conclusively demonstrates Arnold's claims are meritless, and so his motion to expand the record will be denied, his Section 2255 motion will be denied without a hearing, and no certificate of appealability will issue.

### I.     Factual Background

In January 2017, Arnold was indicted on five counts, which included: (1) criminal conspiracy – sex trafficking by force, fraud and coercion in violation of 18 U.S.C. § 1594(c); (2) sex trafficking by force, fraud and coercion in violation of 18 U.S.C. § 1591(a) and (b)(l); (3) criminal conspiracy – possession with intent to distribute heroin and marijuana in violation of 21 U.S.C. § 846; (4) possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(l); and (5) possession

with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(l). (Doc. 1). The court appointed Jonathan W. Crisp, Esq. as Arnold's trial counsel. (Doc. 37).

At trial, Crisp conceded Arnold was engaged in sex trafficking but argued Arnold was not the leader of a hierarchical trafficking conspiracy. (See, e.g., Doc. 239, 6/17/19 Trial Tr. at 19:20-22 (conceding "it would be disingenuous for the defense to say anything other than my client was a pimp."; id. at 22:11-15 ("But was the conspiracy the overarching conspiracy that [the government is] trying to make it to be? . . . we believe it was not")). Throughout the proceedings, the government presented evidence that minors were among those who were trafficked. (See, e.g., Doc. 234, 6/17/19 Trial Tr. at 37:3-4 (law enforcement testifying two victims were "under the age of 18, definitely not adults."); Doc. 229, 6/18/19 Trial Tr. at 152:7-9 (a cooperating witness recounting one victim "said that she was 17[.]")). Crisp objected to some, but not all, of this evidence. (See, e.g., Doc. 229, 6/18/19 Trial Tr. at 152:10-11; id. at 200:9-201:7, id. at 202:11-16; Doc. 231, 6/20/19 Trial Tr. at 410:14-17). In June 2019, a jury convicted Arnold of all offenses except for marijuana possession at Count Six after a five-day trial. (Doc. 214).

After the trial concluded, Crisp filed a motion for acquittal or new trial challenging the sufficiency of the evidence. (Doc. 220, Doc. 225). Over a month later, Crisp filed a motion for leave to file an additional responsive brief to argue the government failed to specify in the indictment how Arnold's conduct constituted sex trafficking in relation to any particular victim because the government's evidence concerned multiple victims and neither the indictment, the jury verdict slip, or the jury instructions guided jurors on how to render a verdict on a single

victim. (Doc. 245). The court denied this motion, observing the defense had several opportunities to raise this issue previously and failed to do so. (Doc. 246). The court also denied the motion for acquittal and new trial. (Doc. 265, Doc. 266). In September 2020, the court sentenced Arnold to 300 months of incarceration after remarking the guidelines range of 360 months to life was "draconian." (Docs. 344, 363 at 4).

Our court of appeals affirmed Arnold's conviction in July 2021, and the United States Supreme Court denied certiorari in May 2022. United States v. Arnold, 854 F. App'x 464 (3d Cir. 2021); Arnold v. United States, 142 S. Ct. 2760 (2022). Arnold timely challenges his conviction under 28 U.S.C. § 2255, briefing has completed, and the motion is ripe for disposition. (Docs. 390, 442, 448).

## II. Legal Standard

### A. Motion to Vacate

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. A petitioner has one year after his conviction becomes final to file a Section 2255 motion. 28 U.S.C. § 2244(d)(1). Courts may afford relief under Section 2255 on numerous grounds including "that the sentence was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a). The statute provides, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless

those allegations are "clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).

A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting [Section] 2255 relief that are not clearly resolved by the record." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546). Conversely, an evidentiary hearing is not required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief [.]" 28 U.S.C. § 2255(b). Whether to hold an evidentiary hearing "is committed to the sound discretion of the district court." Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).

### B. Ineffective Assistance of Counsel

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. Id. at 687-88. The defendant bears the burden of proving both prongs. Id. at 687.

To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of

4

ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" Strickland, 466 U.S. at 690.

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding "would have been different." Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### III. Discussion

#### A. Arnold's Trial Counsel Was Not Ineffective

Arnold argues his trial counsel, Crisp, provided constitutionally ineffective assistance before, during, and after his trial. (See Doc. 390). The "files and records of the case conclusively show" Crisp did not provide ineffective assistance, and therefore Arnold's arguments can be resolved—and his claims can be denied—without an evidentiary hearing and without expanding the record. 28 U.S.C. § 2255(b); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988) ("If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing.").

5

### i. Pre-Trial

With respect to pretrial matters, Arnold contends Crisp "was unable and unavailable" to prepare a trial strategy, and only met with Arnold two times—each time, for less than an hour—in the year leading up to trial. (See Doc. 390 at 4-5). Arnold also asserts Crisp failed "to investigate and interview witnesses" and disregarded Arnold's objections to attending a reverse proffer and a competency evaluation before his trial. (See id. at 5). Arnold maintains Crisp's failure to file a pretrial motion to dismiss Counts One and Two under Rule 12 on the ground of duplicity, or to request a bill of particulars under Rule 7 to clarify the counts in the indictment, amount to ineffective assistance of counsel. (See id. at 5-6).

Contrary to Arnold's claims, the record supports the presumption Crisp reasonably prepared for trial and was in constant communication with Arnold. See Strickland, 466 U.S. at 689; Gray, 878 F.2d at 710. Crisp attests in a sworn affidavit that he conferred with Arnold at least ten times before the trial, both in-person and over the phone, and Crisp employed a private investigator "to assist [Crisp] in discovery review, trial preparation, and attend client visits." (See Doc. 447 at ECF 9-10). This affidavit is supported by numerous letters Arnold sent Crisp. In one letter, Arnold expressed to Crisp he was "extremely appreciative" that Crisp paid him a legal visit, that Crisp and the private investigator "will be in [Arnold's] prayers," and Arnold "appreciate[s] [Crisp's] services." (Id. at ECF 1-2). In another letter, Arnold thanks Crisp for the "constant communication through mail, and phone calls by [Crisp's] staff and yourself." (Id. at ECF 6).

Turning to motions practice, Arnold bears the burden of demonstrating a reasonable probability that Crisp's failure to file the motion to dismiss Counts One and Two and to request a bill of particulars resulted in his convictions on these counts. Arnold has not, nor can he, for three reasons.

First, Crisp's decision not to file these motions are "strategic choices" which "are virtually unchallengeable[.]" Strickland, 466 U.S. at 690. Second, it is uncertain whether such motions would be meritorious. As our court of appeals observed in its decision affirming Arnold's sentence, there is no Supreme Court or Third Circuit precedent that "addressed the allowable unit of prosecution under 18 U.S.C. § 1591(a), the statute at issue here." Arnold, 854 F. App'x at 466. Third, even assuming such motions would be successful, it is unclear how they would have benefited Arnold. In this counterfactual scenario, the government could have reindicted Arnold on separate counts of sex trafficking for each victim. The government adduced much evidence at trial showing Arnold trafficked multiple victims, and convictions on these additional counts could have increased Arnold's sentencing exposure. (See, e.g, Doc. 229, 6/18/19 Trial Tr. at 128:21-24, 131:12-18 (a victim testifying Arnold was a pimp who recruited women to join his enterprise); Doc. 230, 6/19/29 Trial Tr. at 307:2 (a co-conspirator recounting he saw Arnold assault victims three times). And even if the court ordered the government to file "a bill of particulars that would have set forth the specific victims," Arnold has failed to show the deleterious effect on his case. (Doc. 390 at 6).

### ii. Trial

Arnold claims Crisp's trial performance also was constitutionally deficient. Crisp conceded the substantive sex trafficking charge in his opening statement, even though Arnold had always "established his innocence" and instructed Crisp to assert Arnold's innocence. (Doc. 390 at 7-8). Arnold also argues the government constructively amended his indictment to include the allegation that he trafficked two victims "knowing and in disregard of the fact" that they were minors and chides Crisp for not objecting to the government's reference to these victims' ages as constructive amendment. (Id. at 9-12). Arnold notes, however, Crisp did object to the admission of testimony regarding the victims' ages as irrelevant because Arnold had not been charged with trafficking minors. (See id. at 10-11). Finally, Arnold faults Crisp for failing to call witnesses and not raising a motion for acquittal prior to resting. (See id. at 12).

Crisp's concession at trial that Arnold was engaged in sex trafficking did not result in ineffective assistance of counsel. This was a tactical decision resulting from Crisp's "thorough investigation of law and facts," Strickland, 466 U.S. at 690, as Crisp acknowledges in his affidavit "the evidence that [Arnold] had [engaged in sex trafficking] was overwhelming and to assert otherwise would defy credibility." (Doc. 447 at ECF 11). And Arnold's contention he had always "established his innocence" is belied by the record. (Doc. 390 at 7-8). In one pre-trial letter to Crisp, Arnold indicated his desire to negotiate a "global plea" with his co-defendants whereby he would receive a maximum sentence of 60 months for the sex trafficking charges or the drug offenses. (Doc. 447 at ECF 4). Crisp also recounts in his affidavit "Mr.

8

Arnold provided a tremendous amount of detail in how he ran his sex trafficking business" and "[a]t no point did Mr. Arnold ever state he was not a pimp." (Id. at 10). All attorneys have a "duty of candor toward the court[.]" United States v. Savage, 85 F.4th 102, 117 (3d Cir. 2023) (quoting Rosales-Mireles v. United States, 585 U.S. 129, 145 (2018)). Arnold cannot fault Crisp for refusing to betray his ethical duty.

Arnold's claims regarding Crisp's failure to object to constructive amendment, failure to call defense witnesses, and failure to file a motion of acquittal all fare no better. First, as Arnold himself concedes, Crisp did in fact object to the government's reference to the two underage victims throughout the trial because Arnold had not been charged with trafficking minors. (See, e.g., Doc. 229, 6/18/19 Trial Tr. at 152:10-11; id. at 200:9, 202:11-16; Doc. 231, 6/20/19 Trial Tr. at 410:14-17). So too did our court of appeals reject Arnold's constructive amendment argument on direct appeal because "[p]ermitting evidence about the age of certain victims did not broaden the possible bases for convicting Arnold." Arnold, 854 F. App'x at 465-467. Second, with respect to Crisp's decision not to call defense witnesses, this was a strategic choice. Strickland, 466 U.S. at 690. In any event, Arnold does not proffer which witnesses Crisp should have called and how their testimony would have resulted in Arnold's acquittal. See id. at 694 (requiring the petitioner to demonstrate reasonable probability the outcome "would have been different" but for the attorney's ineffective assistance). Crisp's decision not to file a motion of acquittal after resting also was a strategic decision which is "virtually unchallengeable" for an ineffective assistance claim. Id. at 690. Arnold also fails to demonstrate this

9

motion would have been fruitful, in light of both the troves of incriminating evidence the government presented and the Third Circuit's affirming the jury verdict.

### iii. Post-trial

Arnold also takes umbrage with his counsel's handling of the pre-sentencing report. He contends Crisp failed to object to references in the pre-sentence report ("PSR") to the underage victims and various "alleged victims of Arnold's" and failed to "conduct investigation or interview Arnold to determine if these were truly part of the case." (Doc. 390 at 13). This alleged ineffectiveness, Arnold argues, led to enhanced sentencing guidelines range. (See id.)

Arnold's bare claims do not amount to a successful ineffective assistance claim. He repackages his constructive amendment argument regarding the inclusion of underage victims, which fails for these post-trial claims in the same way it does for the trial claims previously mentioned. By the time the PSR was crafted, these were no "alleged victims" as Arnold contends; rather, a jury convicted Arnold of trafficking these victims. Thus, any sentencing enhancements were not the result of Crisp's ineffectiveness but rather Arnold's criminal conduct. Contrary to Arnold's assertion, Crisp did in fact object to the PSR's inclusion of the minor victims and reasserted this objection in the sentencing memorandum. (See Docs. 301; 337). And, in any event, Arnold cannot demonstrate prejudice because the court varied downwards when it sentenced Arnold to 300 months from the "draconian" guidelines range of 360 months to life. (Doc. 363 at 4).

## B. A Certificate of Appealability Will Not Issue

A habeas petitioner under Section 2255 must obtain a certificate of appealability to appeal the denial of his claims. 28 U.S.C. § 2253(c)(1); <u>United States v. McLaughlin</u>, 607 F. Supp. 3d 522, 548 (M.D. Pa. 2022). To obtain a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Arnold has made no such showing, so a certificate of appealability will not issue.

## IV. Conclusion

Arnold has alleged his trial counsel, Jonathan W. Crisp, Esq. provided ineffective assistance before, during, and after his trial. The record conclusively demonstrates Crisp was not ineffective. Therefore, Arnold's motion (Doc. 389) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and motion (Doc. 393) to expand the record will be denied. No certificate of appealability will issue. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    July 11, 2025